J-A04026-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: K.J.K., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: T.W. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1260 MDA 2017 |

Appeal from the Order Entered July 12, 2017
In the Court of Common Pleas of Berks County Orphans' Court at No(s):
85249

BEFORE: STABILE, J., NICHOLS, J., and RANSOM, J.[*]

MEMORANDUM BY NICHOLS, J.:                          **FILED APRIL 18, 2018**

Appellant T.W. (Stepfather) appeals from the order that denied his petitions to involuntarily terminate the parental rights of M.K. (Father) to his daughter K.J.K., who was born in January of 2008 (Child).[1] Stepfather argues that the trial court erred in denying his petition to terminate Father's parental rights under 23 Pa.C.S. § 2511(a)(1) and (b), that the trial court's initial opinion filed in support of its decision was defective, and that the trial court abused its discretion in finding Father's testimony credible. We affirm.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] As noted below, Stepfather also filed a petition to adopt and change Child's last name, which the trial court also denied. Stepfather's arguments on appeal focus on the trial court's rulings as to his petition to terminate Father's parental rights.

We summarize the factual and procedural history as follows. Child was born to T.J.W. (Mother) and Father, and Child shares Father's last name. Mother and Father were never married, but lived together before Child's birth and for a short period after Child's birth.

Mother married Stepfather in 2013. Mother and Stepfather also have a daughter (Maternal Half-Sister) together. Child currently lives with Mother, Stepfather and Maternal Half-Sister.

On January 12, 2017, Stepfather filed separate petitions seeking to terminate Father's parental rights to Child and seeking to adopt Child and change her last name. On June 14, 2017, the trial court held an evidentiary hearing on Stepfather's petitions.[2] At the hearing, Stepfather presented the testimony of Mother. Stepfather and Child did not testify at the hearing. Father, who was incarcerated at the time of the hearing, was present in the courtroom with counsel and testified on his own behalf. Neither party presented expert testimony.

From the testimony, the trial court found the following facts:

_____

[2] On March 16, 2017, the trial court initially appointed Attorney Melissa Krishock, Esq., as a guardian *ad litem* (GAL) for Child for purposes of the termination hearing. However, there was no dependency proceeding in this matter, and there was no indication on the record that Attorney Krishock took any actions as GAL. Subsequently, on April 6, 2017, the trial court vacated Attorney's Krishock's appointment as GAL and appointed her as legal counsel for Child. At the hearing on the termination petition, Attorney Krishock actively conducted questioning of the witnesses and made legal argument on behalf of Child. We conclude that Attorney Krishock appointment as legal counsel comports with *In re Adoption of L.B.M.*, 161 A.3d 172 (Pa. 2017).

### Custody Orders after Their Time Together

Mother testified that when the parties had first separated, each parent had equal custody as set forth in a February 2009 Montgomery County custody order. In April 2012, Mother discovered that Father had overdosed on heroin during his custodial period with Child. Mother petitioned to reduce Father's custody. Father's physical custody was reduced to partial physical custody on alternate weekends and Wednesdays after school. Sometimes Father did not pick Child up on Wednesdays. Mother claimed that Child was upset when Father did not show up for visitation.

In June 2016, Mother petitioned for Father to have only supervised visitations because she had found out that he had been arrested in April 2016, for heroin possession. Mother's petition was granted and visitation only under supervision was ordered for Father.

One supervised visit was scheduled for August 7, 2016, but Father cancelled it because he did not have the money for the supervision fee. The fee for Father to pay for supervised visitation was $35.00 per hour, or $70.00, for a two[-]hour period. Mother testified that Father has not contacted Child by telephone, mail, or personal visits since June 2016. The last time that Father spoke to Child was during his custody period on June 21, 2016.

Child was not upset when she returned home to Mother after her last visit with Father on June 21, 2016. Father also had Child on June 1, 2016. Mother admitted on cross-examination that Father sent her text messages requesting to see Child after August 2016. On the day that Father received the petition for the involuntary termination of his parental rights, he went to Mother's home[,] but [M]other denied his seeing [C]hild.

### Mother's and Father's Testimony

Father testified that he believed that he would soon be released on a parole violation. Father could not afford supervised visitation because he had not been working at the time. Father testified that he went several times to Mother's residence to see Child, but they refused to permit him contact because it was in violation of the supervised visitation order. He sent Child a Christmas card in December 2016.

Mother disputes Father's testimony. She contended that she never received any mail from Father and that he showed up at her residence only once in January 2017[,] after he was served Stepfather's court documents for this proceeding. Mother testified that she and Stepfather called the police when he came uninvited to their home.

Father testified that he loves [C]hild, and she loves him. He wants a chance to be able to get back into Child's life. He does not believe that Child wants to be adopted by Stepfather. Father has a two-and-a-half year old daughter [(Paternal Half-Sister)] with his wife.

Stepfather and Child did not testify.

Substance Abuse

Father has a problem with substance abuse. He injured his back on the job and became addicted to prescribed pain medicine which led to [his] heroin addiction. He fought the addiction without any treatment until 2016. Father went for drug treatment three times in 2016. These included a five-day inpatient detoxification program in January and a twenty-one-day inpatient program completed in June. After his visits were ordered to be supervised, Father was arrested again on July 4, 2016 and August 31, 2016 for possession of heroin. He immediately entered and completed a twenty-eight-day inpatient treatment program in September.

Father testified that after he was served with Stepfather's petition to terminate his parental rights, he soon relapsed. He was arrested again [on] February 15, 2017 and immediately admitted himself into a long-term treatment program at Eagleville. Father went to inpatient treatment from February to April 2017. He would have stayed longer[,] but [his Montgomery County Probation Officer had him arrested for violating his probation due to his February 2017] arrest[,] removed him from treatment and placed [him] in Montgomery County Prison. He admits that he is an addict and he went to treatment to become a better parent. He missed visitation during his inpatient treatments. Besides treatment programs, Father also attended [Narcotics Anonymous (NA)] meetings.

Father claimed that he could not remember everything due to his drug use. Father had two driving under the influence [(DUI)]

charges in 2006 and 2009. He served thirty days for the 2009 DUI charge. He had no further arrests until 2016. Father does not recall how many bags of heroin he had when arrested a second time for possession. Father does not remember how much he spent daily on his addiction. Father further testified that he does not remember emails from Mother's attorney or a suicide attempt.

<u>Child Support</u>

Father was behind on his child support. Mother received a lump sum payment from Father that came from Father's mother [("Paternal Grandmother")] in October 2016. He borrowed it to pay off the arrears. She also received payments from Father's income tax refunds. His child support is approximately $131.00 per month[,] which Mother instituted for the first time on June 28, 2016.

Trial Ct. Op., 12/5/17, at 2-5 (citations omitted).

On July 12, 2017, the trial court entered an order with a supplemental discussion memorandum, denying Stepfather's petitions to involuntarily terminate Father's parental rights, and to adopt Child and change her last name to Stepfather's. On August 7, 2017, Stepfather filed a notice of appeal, along with a concise statement pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

The trial court failed to file an opinion pursuant to Pa.R.A.P. 1925(a) in response to Stepfather's Rule 1925(b) statement. On November 21, 2017, this Court entered an order, remanding this matter to the trial court for a Rule 1925(a) opinion. This Court's November 21, 2017 remand order also provided Stepfather with seven days to file a supplemental brief, and Father and Child with seven days thereafter to file supplemental responsive briefs. On December 5, 2017, the trial court filed a Rule 1925(a) opinion pursuant to this Court's November 21, 2017 order.

In his initial brief on appeal, Stepfather raises the following issues:

1. Did the trial court err in determining that the parental rights of Father should not be terminated as to Child?

2. Did the trial court err in finding Father has a strong bond with Child?

3. Did the trial court err in not applying the law and statute to this matter?

4. Did the Court err in accepting the credibility of an admitted drug addict and discounting the testimony of Stepfather and Mother?

Stepfather's Initial Brief at 4.[3]

Stepfather first argues that the trial court erred in refusing to terminate Father's parental rights under Section 2511(a)(1).[4] He asserts that the trial court erred in finding Father acted affirmatively and made a good faith effort to maintain his parent-child relationship to the best of his ability even during difficult circumstances. Stepfather's Initial Brief at 6. Stepfather contends that Father has failed to be a parent to Child for much longer than the requisite six-month requirement based on his admission that he has been an active

---

[3] Stepfather's supplemental brief raises the following issue:

1. Did the trial court abuse its discretion and/or err as a matter of law in denying the petition to involuntarily terminate Father's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), and (b)?

Stepfather's Supp. Brief at 4. However, Stepfather's arguments in his supplemental brief are duplicative of those set forth in his initial brief.

[4] Stepfather does not raise an issue with respect to the trial court's denial of his petition to terminate Father's parental rights under Section 2511(a)(2).

heroin addict for over five years. *Id.* at 16. Stepfather further avers that in the six months preceding the filing of his petition to terminate Father's parental rights, Father made no effort to parent, visit, or contact Child, and opted to spend his money on drugs rather than pay for scheduled supervised visits with Child. *Id.* at 5-6, 10. Stepfather points out that Father has been incarcerated for nearly a year with no set release date, while he and Mother have been caring for Child in his absence. *Id.* at 10. Stepfather also avers that Child wants to be adopted by him. *Id.* Stepfather thus claims that he met his burden of showing that Father's parental rights as to Child should be terminated under Section 2511(a)(1).

In matters involving the involuntary termination of parental rights, our standard of review is as follows:

> The standard of review in termination of parental rights cases requires appellate courts "to accept the findings of fact and credibility determinations of the trial court if they are supported by the record." *In re Adoption of S.P.*, 47 A.3d 817, 826 (Pa. 2012). "If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion." *Id.* "[A] decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will." *Id.* The trial court's decision, however, should not be reversed merely because the record would support a different result. *Id.* at 827. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings. *See In re R.J.T.*, 9 A.3d [1179, 1190 (Pa. 2010)].

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013).

"The trial court is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *In re M.G. & J.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004) (citation omitted). "[I]f competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result." *In re Adoption of T.B.B.,* 835 A.2d 387, 394 (Pa. Super. 2003) (citation omitted).

The termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S. §§ 2101-2938, and requires a bifurcated analysis of the grounds for termination, followed by the needs and welfare of the child.

> Our case law has made clear that under Section 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted). We have defined clear and convincing evidence as that which is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re C.S.*, 761 A.2d 1197, 1201 (Pa. Super. 2000) (*en banc*) (citation omitted).

Section 2511(a)(1) provides as follows:

**(a) General rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

23 Pa.C.S. § 2511(a)(1).

We have explained this Court's review of a challenge to the sufficiency of the evidence to support the involuntary termination of a parent's rights pursuant to Section 2511(a)(1) as follows:

To satisfy the requirements of Section 2511(a)(1), the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties. In addition,

Section 2511 does not require that the parent demonstrate both a settled purpose of relinquishing parental claim to a child and refusal or failure to perform parental duties. Accordingly, parental rights may be terminated pursuant to Section 2511(a)(1) if the parent either demonstrates a settled purpose of relinquishing parental claim to a child or fails to perform parental duties.

Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

*In re Z.S.W.*, 946 A.2d 726, 730 (Pa. Super. 2008) (citations omitted).

As it relates to the crucial six-month period prior to the filing of the petition, this Court has instructed:

[I]t is the six months immediately preceding the filing of the petition that is most critical to our analysis. However, the trial court must consider the whole history of a given case and not mechanically apply the six-month statutory provisions, but instead consider the individual circumstances of each case.

*In re D.J.S.*, 737 A.2d 283, 286 (Pa. Super. 1999) (citations omitted). This requires the Court to "examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of his or her parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination." *In re B., N.M.*, 856 A.2d 847, 855 (Pa. Super. 2004) (citation omitted).

Further, we have stated:

[T]o be legally significant, the [post-abandonment] contact must be steady and consistent over a period of time, contribute to the psychological health of the child, and must demonstrate a serious intent on the part of the parent to recultivate a parent-child relationship and must also demonstrate a willingness and capacity to undertake the parental role. The parent wishing to reestablish his parental responsibilities bears the burden of proof on this question.

*In re Z.P.*, 994 A.2d 1108, 1119 (Pa. Super. 2010) (citation omitted); *see also In re Adoption of C.L.G.*, 956 A.2d 999, 1006 (Pa. Super 2008) (*en banc*).

Regarding the definition of "parental duties," this Court has stated:

There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and

- 10 -

support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this Court has held that the parental obligation is a positive duty which requires affirmative performance.

This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child.

Because a child needs more than a benefactor, parental duty requires that a parent exert himself to take and maintain a place of importance in the child's life.

Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with . . . her physical and emotional needs.

*In re B., N.M.*, 856 A.2d at 855 (citations omitted).

With regard to a parent's incarceration, in *In re Adoption of S.P.*, our Supreme Court reiterated the standard of analysis pursuant to Section 2511(a)(1) for abandonment and added that:

[a]pplying [*In re Adoption of McCray*, 331 A.2d 652 (Pa. 1975),] the provision for termination of parental rights based upon abandonment, now codified as § 2511(a)(1), we noted that a parent "has an affirmative duty to love, protect and support his child and to make an effort to maintain communication and association with that child." We observed that the father's incarceration made his performance of this duty "more difficult."

\* \* \*

- 11 -

[A] parent's absence and/or failure to support due to incarceration is not conclusive on the issue of abandonment. Nevertheless, we are not willing to completely toll a parent's responsibilities during his or her incarceration. Rather, we must inquire whether the parent has utilized those resources at his or her command while in prison in continuing a close relationship with the child. Where the parent does not exercise reasonable firmness in declining to yield to obstacles, his other rights may be forfeited.

*In re Adoption of S.P.*, 47 A.3d at 828 (citations omitted). Further, the

Supreme Court stated, "incarceration neither compels nor precludes

termination" of parental rights. *Id.*

In the instant matter, in finding a lack of grounds for termination under

Section 2511(a)(1), the trial court concluded:

[Stepfather's and Mother's] evidence is not sufficient to provide grounds for termination under § 2511(a)(1) because this court does not find that Father had evidenced a settled purpose of relinquishing [his] parental claim and duties to Child. . . . Father had completed detoxification and two inpatient treatment programs before the petition for termination was even filed. He enrolled in an additional long-term care inpatient treatment program after he was served with Stepfather's court papers and arrested for a fourth possession of heroin. Thus, the conditions and causes of neglect of his parental duties can and will be remedied by Father if he is able to attain and remain in sobriety. Certainly if he is unsuccessful in the treatment of this addiction, his parental neglect will sadly become long-term; however, at this point, the benefit of any doubt must be resolved in Father's favor because of his earnest treatment efforts to deal with the addiction.

* * *

To Father's credit, the evidence shows that he finally accepted his need for sobriety and that he did, six months before the supervised visitation order became effective. This is also a year before Stepfather filed the petition for termination of Father's parental rights, and three months before his first arrest for possession. Father went into a detoxification program followed by twenty-one days of inpatient treatment. His third inpatient stay

- 12 -

was in September for twenty-eight days, all three clearly evidencing progression of effort on his part to save his relationship with Child.

Mother did not petition for supervised visitation until after Father's arrest for possession of heroin on April 18, 2016. Father's second and third arrests did not happen until after the custody order of June 28, 2016 was entered which permitted Father only supervised visits. Father lost his critical . . . eight-year fatherly life with his child when his custody was reduced to only supervised visitation.

When considering whether to terminate parental rights on the ground that the parent failed to perform parental duties for at least six months prior to the termination petition, a court should consider the entire background of the case and not simply mechanically apply the six-month statutory provision. The court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of his parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination. **In re Z.P.**, 994 A.2d 1108 (Pa. Super. 2010). This court did this examination in the case *sub judice*.

Trial Ct. Op., 12/5/17, at 6-10.

Additionally, the trial court noted that Mother and Stepfather immediately counted off the first time that a six-month period existed of Father having little contact with Child, and then filed Stepfather's termination petition two weeks after the six-month period. **Id.** at 10. The trial court opined that termination of Father's parental rights is a drastic step at this time. Therefore, the trial court concluded that Stepfather did not meet his burden of proof of providing clear and convincing evidence under Section 2511(a)(1). **Id.**

- 13 -

We conclude that the trial court did not commit an error of law or abuse its discretion in concluding that Father's conduct was not so deficient as to meet the statutory requirements necessary for termination of parental rights under Section 2511(a)(1). In the six months immediately preceding the filing of the petitions, Father missed two scheduled supervised visitations with Child, claiming he could not afford to pay for the visits. Father asked Mother to pay half of the visitation fee in order for him to see Child, but she refused. *Id.* at 25, 41-42. Mother admitted that she received text messages from Father requesting to see Child but ignored them due to the June 28, 2016 custody order. *Id.* at 25-26.

In addition, Father paid child support from November 2016 to January 2017, and borrowed money from Paternal Grandmother to pay his child support arrears. *Id.* at 29, 49-51. Father also testified to sending Child a Christmas card in December 2016 even though Mother testified she did not receive anything from Father. *Id.* at 17, 30, 42-44. Father also requested to see Child when he went to Mother's residence after receiving notice of Stepfather's petition to terminate his parental rights, but Mother and Stepfather would not permit him to see Child. *Id.* at 26, 43.

Most importantly, the record evidences that Father zealously took steps on his own accord to rectify his drug problem in order to be a better parent and resume his parental duties by enrolling himself in rehab three times in 2016 and once in 2017. *Id.* at 44-45, 52-53. Father testified that when he

is released from jail, he will continue with seeking help for his addiction, and recognizes he needs support from his family and friends. *Id.* at 46.

Moreover, while the trial court focused on the six months prior to the filing of Stepfather's petition, it also examined the entire history of this case. *See In re D.J.S.*, 737 A.2d at 286. The record shows that Father has been an active parent in Child's life since birth. After Mother and Father separated, Father obtained shared 50/50 physical custody of Child from November 11, 2009 until January 23, 2014, when his custody was modified to partial physical custody, where he had Child every other weekend and Wednesdays. N.T., 6/14/17, at 23-24, 39-40. Both custody orders demonstrate that Father has resided, cared for and provided for Child's needs during his ordered custodial periods. However, we note that Father's drug addiction has not only led to several arrests and incarcerations, but it has considerably interfered with his ability to maintain a relationship with Child and parent her safely. After Father was arrested for possession of heroin in April 2016, Father's custodial time with Child was significantly reduced to supervised visitation on June 28, 2016. *Id.* at 11-12. Father last saw Child on June 21, 2016. *Id.* at 17, 40.

Accordingly, after careful review of the record, we agree with the trial court's conclusion that Father has acted affirmatively and has made sufficient efforts and/or attempts to preserve his relationship with Child to the best of his ability, during his difficult struggle with his heroin addiction. *See In re Dale A., II*, 683 A.2d 297, 302 (Pa. Super. 1996). Thus, as the trial court's

determinations regarding are supported by competent, clear and convincing evidence in the record, we discern no abuse of discretion and will not disturb them. *See In re T.S.M.*, 71 A.3d at 267; *In re Adoption of T.B.B.*, 835 A.2d at 394.

Stepfather next argues that the trial court erred in refusing to terminate Father's parental rights under Section 2511(b) because Father has a strong bond with Child.[5] Stepfather's Initial Brief at 12. Stepfather claims that Father spent time getting high on heroin instead of bonding with Child. *Id.* Stepfather contends that Father's bond with Child was so poor that he was unable to provide information regarding his daughter's teachers or her extracurricular activities. *Id.* at 13. Stepfather claims that he helps Mother with Child by scheduling her appointments, handling her homework and performing the day-to-day parental responsibilities for Child while Father has made no efforts in this regard. *Id.*

Section 2511(b) states:

**(b) Other considerations**.—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of

---

[5] We may affirm based solely on our conclusion that the trial court did not err in refusing to terminate Father's parental rights based on Section 2511(a)(1). *See In re L.M.*, 923 A.2d at 511 ("Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b)"). Nevertheless, we will review Stepfather's argument that the trial court erred in refusing to terminate Father's parental rights under Section 2511(b) as an independent basis.

environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(b).

This Court has stated that the focus in terminating parental rights under Section 2511(a) is not on the parent, but on the child pursuant to Section 2511(b). *See In re Adoption of C.L.G.*, 956 A.2d at 1008. In reviewing the evidence in support of termination under Section 2511(b), our Supreme Court has stated as follows:

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." *In re K.M.*, 53 A.3d 781, 791 (Pa. Super. 2012). In *In re E.M.*, [620 A.2d 481, 485 (Pa. 1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. *In re K.M.*, 53 A.3d at 791.

*In re T.S.M.*, 71 A.3d at 267.

When evaluating a parental bond, "the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, Section 2511(b) does not require a formal bonding evaluation." *In re Z.P.*, 994 A.2d at 1121 (citations omitted). Although it is often wise to have a bonding evaluation and make it part of the certified

record, "[t]here are some instances . . . where direct observation of the interaction between the parent and the child is not necessary and may even be detrimental to the child." *In re K.Z.S.*, 946 A.2d 753, 762 (Pa. Super. 2008).

With regard to Section 2511(b), the trial court found as follows:

Even if the evidence is found sufficient to terminate under § 2511(a)(1) . . . it does not satisfy the purpose of § 2511(b): "The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." This analysis must include the consideration of the bond between the child and the parent.

Father, even though a heroin addict, was able to function, from 2012 until the summer of 2016, with regard to his parental relationship and his bond with [C]hild. Mother obviously acknowledges that the bond between Father and Child was so strong that the developmental, physical, and emotional needs and welfare of Child would have been destroyed by the termination of Father's parental rights in 2012. Mother testified that it was 2012 when she learned of Father's heroin addiction. No petition for termination of Father's parental rights was filed during this time[,] even when he overdosed while having custody of [C]hild. It was only after his first arrest that a petition was filed[,] and that is after Father completed detoxification and other treatment.

\* \* \*

Unquestionably, Child had a very close relationship, a bond with Father. Even Mother testified that Child was upset if Father missed visitation and that she was fine upon her return from her last custodial period with Father. Unquestionably, [F]ather also has a very serious addiction. According to the totality of the circumstances, Father is trying very hard to remedy his drug addiction, even after several relapses. It would be an unjust result if he is successful as he testified he is laboring to be, only to have his parental rights terminated.

Father voluntarily fought hard to maintain the bond [with Child] by dealing with the devil of his addiction; he did not simply pay lip

service to this concept, but he completed detoxification, a twenty-one-day inpatient, and then a twenty-eight-day inpatient treatment program in the first eight months of 2016. He did so, not after, but before it was too late. This court does not find, at this time, that the evidence clearly warranted an involuntary termination. Father is attempting to remedy his problem.

In a termination of a parental rights case, a court may consider post-petition efforts of a parent to reestablish parental responsibilities if the efforts were initiated before the filing of the termination petition and continued after the petition date. *In re Z.P.*, 994 A.2d 1108 (Pa. Super. 2010). [Father] may fail, but this court believes that after eight years of participation in [C]hild's life and the clear establishment of a close bond, he deserves to be given an opportunity to succeed and to resume his parenting duties and continue to fight his daily battle for sobriety.

Even assuming arguendo that the evidence did meet the standards to terminate Father's parental rights, the second prong of the test was not met. The complete and irrevocable termination of parental rights is one of the most serious and severe steps a court can take, carrying with it a great emotional impact for the parent and the child. *In re Bowman*, 436 Pa. Super. 10, 647 A.2d 217 (1994). Even when a statutory requirement for termination of parental rights has been established, a court must consider whether the child's needs and welfare will be met by a termination. The court must take into account whether a bond exists between the child and parent, and whether the termination would destroy an existing, necessary, and beneficial relationship. *In re Z.P.*, 994 A.2d 1108 (Pa. Super. 2010).

\* \* \*

. . . Father testified and Mother, to a lesser extent, also testified that a bond existed between Father and Child. Mother presented no evidence that a bond did not exist between Father and Child or that a bond even existed between Child and Stepfather. Child will be ten years old on January 1, 2018. No party stated what her preference was except Father[,] who testified Child would not want to eliminate him from her life. Neither Child nor Mother

offered any testimony to contradict this.[6] Although it is not a requirement under the Act, there was also no evidence from a professional who examined the strength of the bond between Father and Child and the effect that termination of that bond would have on Child to help this court make a decision.

Trial Ct. Op., 12/5/17, at 6-10.

Additionally, the trial court determined that Mother and Stepfather presented evidence only on the grounds for termination based on Father's conduct, but never sufficiently addressed the issue of whether termination promotes this Child's emotional needs and welfare. *Id.* at 10. The trial court was unconvinced that Father cannot rehabilitate himself and assume his vital relationship with Child. *Id.* Moreover, without any evidence to support the conclusion that termination promotes the emotional needs and welfare of Child, the trial court concluded that Stepfather did not meet his burden of proof. *Id.*

We find that the trial court's conclusions regarding Section 2511(b) are supported by the record. The record demonstrates that Father actively parented Child for most of her life, and Child recognizes Father as her parent. Accordingly, Father and Child have a parent-child bond. Mother admitted that Child was upset and would cry if Father missed visitation. *See* N.T., 6/14/17, at 10. Furthermore, Stepfather and Mother did not present any evidence that

_____

[6] We note that Child's legal counsel, Attorney Krishock, stated in arguments that Child "wants this to go forward." N.T., 6/14/17, at 92. However, the court noted that it was not clear whether Child understood the ramifications of the proceeding. *Id.* at 93.

- 20 -

severing the ties between Father and Child was in her best interests and that she would not be negatively affected by the termination of Father's parental rights. Stepfather also failed to present evidence of his bond with Child or that Child was thriving under his care without Father. In accordance with the law, the trial court properly considered Child's bond with Father and the importance of continuity of relationships, finding that any existing parent-child bond between Father and Child cannot be severed without causing detrimental effects on Child. Thus, we find the record supports the trial court alternative decision to deny Stepfather's petition to terminate Father's parental rights pursuant to Section 2511(b).

Next, Stepfather contends that the trial court's initial opinion accompanying its order did not reference 23 Pa.C.S. § 2511 or any relevant case law regarding termination of parental rights. Stepfather's Initial Brief at 13. Stepfather thus submits that the trial court failed to properly analyze Section 2511(a)(1) and (b) because had it done so, it would have realized that Stepfather met his burden of proving that Father has demonstrated a settled purpose to relinquish his parental claim and bond with Child by continuing in his active addiction and trying to kill himself. *Id.* at 13-14.

Although we agree that the trial court's initial July 12, 2017 opinion was deficient, this Court entered an order on November 21, 2017, remanding this matter to the trial court for a Rule 1925(a) opinion. On December 5, 2017, the trial court filed a Rule 1925(a) opinion pursuant to this Court's November

21, 2017 order. The trial court's December 5, 2017 Rule 1925(a) opinion complied with the mandate of this Court, containing references to the evidence, stating the court's reasons, analyzing Sections 2511(a)(1) and (b), and assessing the demeanor and credibility of those witnesses upon whose testimony the court relied. *See Commonwealth ex rel. Debeary v. Debeary*, 456 A.2d 221 (Pa. Super. 1983). Furthermore, as stated above, the trial court did not misapply the law or abuse its discretion in finding the requirements for termination of Father's parental rights were not met under Section 2511(a)(1) and (b). Accordingly, Stepfather's third issue merits no relief.

Finally, Stepfather contends that the trial court erred in accepting credibility of an admitted drug addict and discounting the testimony of Stepfather and Mother. Stepfather's Initial Brief at 14; Stepfather's Supp. Brief at 4. Stepfather contends that Father had selective memory when he testified about matters that could hurt his case, but had precise memory of instances that helped his case. Stepfather's Initial Brief at 14.

Our review of the record refutes Stepfather's claims. The trial court found that:

> Neither parent was entirely credible. Father conveniently did not remember certain things, which he blamed on his drug use. Mother testified that she did not receive certain texts from Father, although she admitted that she had received them in the petition for the involuntary termination of his parental rights . . . [Stepfather] had filed.

Trial Ct. Op., 12/5/17, at 9.

Moreover, Stepfather's arguments largely focus on the credibility of Mother's testimony, a determination that we cannot disturb on appeal. ***See In re M.G. & J.G.***, 855 A.2d at 73-74. As was within its province, the trial court resolved the factual disputes in favor of Father. ***See id.*** We find that the trial court's credibility and weight determinations are supported by competent evidence in the record. ***In re Adoption of S.P.***, 47 A.3d at 826-827.

Accordingly, based upon our review of the record, we find no abuse of discretion and conclude that the trial court appropriately declined to terminate Father's parental rights.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 04/18/18